1
2
3
4
5
6
7
8                        **UNITED STATES DISTRICT COURT**

9                      **SOUTHERN DISTRICT OF CALIFORNIA**

10   TRAVIS RAY THOMPSON,                  Civil No.   06cv2314 IEG (RBB)

11                        Petitioner,
                                          **REPORT AND RECOMMENDATION RE**
12              vs.                        **DENYING AMENDED PETITION FOR**
                                          **WRIT OF HABEAS CORPUS [DOC. NO.**
13   SCOTT KERNAN,                         **6] AND ORDER DENYING SECOND**
                                          **REQUEST FOR APPOINTMENT OF**
14                        Respondent.      **COUNSEL [DOC. NO. 24]**

15

16

17   **I.    INTRODUCTION**

18        Travis Ray Thompson, a state prisoner proceeding pro se, has

19   filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C.

20   § 2254 challenging his Imperial County Superior Court conviction in

21   case number CF-7718 for one count of assault by a prisoner and one

22   count of possession of a weapon by a prisoner.  (Lodgment No. 1,

23   Clerk's Tr. vol. 4, 00937, July 3, 2003.)  He contends his federal

24   constitutional rights were violated for the following reasons:  (1)

25   His appellate counsel was ineffective; (2) the trial court judge

26   improperly prevented Thompson from presenting an entrapment

27   defense; (3) the prosecutor failed to investigate and turn over

28   exculpatory and impeachment information related to the victim and

1  prosecution witnesses; (4) the prison guards' union's excessive

2  political power interfered with the California courts' ability to

3  "do justice;" (5) Thompson was convicted but is actually innocent;

4  and (6) his Sixth Amendment right to counsel was violated when he

5  was forced to represent himself.  (See Am. Pet. 6-24.[1])  His

6  Petition attempts to divert the Court's attention from the fairness

7  of Thompson's trial and the adequacy of his legal representation to

8  the alleged corruptness of the California Correctional Peace

9  Officers Association ("CCPOA") and its political influence.  Only

10 the former is the proper subject of this proceeding.

11      The Court has considered the First Amended Petition,

12 Respondent's Answer and Memorandum of Points and Authorities in

13 Support of the Answer, Petitioner's Traverse and Lodgments, and all

14 the supporting documents submitted by the parties.  In addition,

15 the Court has reviewed the sealed transcripts of trial court

16 hearings conducted on February 8, 2002, May, 1, 2002, and July 5

17 and 11, 2002, pursuant to People v. Marsden, 2 Cal. 118, 465 F.2d

18 44, 84 Cal. Rptr. 156 (1970), and Faretta v. California, 422 U.S.

19 806 (1975).[2]  Based upon the documents and evidence presented in

20 this case, and for the reasons set forth below, the Court

21 recommends that the Amended Petition ("Petition") be **DENIED**.

22 **II.   FACTUAL BACKGROUND**

23      This Court gives deference to state court findings of fact and

24 presumes them to be correct; Petitioner may rebut the presumption

25 _____

26      [1] Because Thompson has attached additional pages to his First Amended
    Petition, the Court has renumbered the pages in order to accurately refer
27   to them.

28      [2] The Court notes that Thompson has filed a copy of the July 5, 2002,
    transcript as an exhibit to his Traverse. (Notice of Lodgment of Ex. Supp.
    Traverse, Ex. J.)

06cv2314

of correctness, but only by clear and convincing evidence.   28
U.S.C.A. § 2254(e)(1)(West 2006); <u>see also</u> <u>Parke v. Raley</u>, 506 U.S.
20, 35-36 (1992) (holding findings of historical fact, including
inferences properly drawn from these facts, are entitled to
statutory presumption of correctness).

The facts found by the state trial and appellate courts are
presumed correct and are supported by the record.   Thompson was an
inmate at Centinela State Prison at the time of the underlying
events.   Correctional Officer Leopoldo Vega was working at
Centinela and was assigned to Thompson's unit as a floor officer.
(Lodgment No. 2, Rep.'s Tr., vol. 7, 249-50, June 20, 2003.)   On
August 21, 1999, Vega was standing at a podium supervising inmates
who were returning from the evening meal.   (<u>Id.</u> at 257-58.)   As he
stood there writing in his log book, he was struck two to four
times from behind.   (<u>Id.</u> at 262.)   When he turned around, Vega saw
Thompson standing behind him.   (<u>Id.</u>)   A bent, inmate-manufactured
weapon was later found on the floor next to Thompson.   (<u>Id.</u> at
264.)   Vega ordered Thompson to the ground, and Thompson complied
after the second or third order.   (<u>Id.</u> at 298.)

Correctional Officer Nicole Panzer was assigned to escort
Thompson from the housing unit to the medical technical assistant's
office and administrative segregation.   (Lodgment No. 2, Rep.'s
Tr., vol. 7, 320-22, June 20, 2003.)   Panzer testified that when
she took control of Thompson, his hands were cuffed behind him,
pursuant to standard procedure.   (<u>Id.</u> at 323, 326.)   She took him
to the medical technical assistant's office to be examined for
injuries.   (<u>Id.</u> at 324.)   Panzer testified that she put Thompson in
a holding cell, at which point he said to "get the f-u-c-k away

1 from me" and that he wished the weapon he used to attack Vega had

2 not bent. (<u>Id.</u> at 325.)

3      After Petitioner was medically evaluated, Panzer took him to a

4 holding cell in the program office to be processed into the

5 Administrative Segregation Unit. (<u>Id.</u> at 325-26.)  She later

6 returned to take Thompson to the Administrative Segregation Unit.

7 (<u>Id.</u> at 326-27.)  Officer Panzer opened the cell door and, when she

8 noticed that Thompson's hands were no longer cuffed behind him,

9 tried to close the cell door. (<u>Id.</u> at 327-28.)  Thompson kicked

10 the gate open and crushed Panzer's hand between the gate and the

11 wall. (<u>Id.</u> at 328, 330-31.)  He then started to choke Panzer with

12 his hands and by pressing the chain which connected the cuffs to

13 her throat. (<u>Id.</u> at 331, 338.)  Panzer fell to the floor in a

14 sitting position with her legs folded under her and Thompson

15 sitting on her lap still choking her. (<u>Id.</u> at 332-33, 369-70.)

16 Petitioner then reached into Panzer's jumpsuit and grabbed her

17 right breast. (<u>Id.</u> at 333-34.)  Panzer's partner, Correctional

18 Officer Wilson, as well as several other officers came to Panzer's

19 aid and finally were able to pull Thompson off of Panzer. (<u>Id.</u> at

20 334-36; Lodgment No. 2, Rep.'s Tr., vol. 8, 412, 429, June 23,

21 2003.)  During the melee, Thompson bit Officer Wilson. (Lodgment

22 No. 2, Rep.'s Tr., vol. 7, 361, 370; Lodgment No. 2, Rep.'s Tr.,

23 vol. 8, 412.)

24      Petitioner testified at trial and admitted stabbing Vega and

25 choking Panzer. (Lodgment No. 2, Rep.'s Tr., vol. 10, 628, 644,

26 June 26, 2003.)  He denied grabbing Panzer's breast or biting

27 Wilson. (Lodgment No. 2, Rep.'s Tr., vol. 9, 604-05, June 24,

28 2003.)  He claimed he was provoked and entrapped into attacking

1   Vega because Vega was systematically denying him and other African-

2   American inmates showers and favoring Hispanic inmates.  (Lodgment

3   No. 2, Rep.'s Tr., vol. 10, 626-28, 659, 635-37, 659.)  He also

4   claimed that Panzer struck him first and that he was acting in

5   self-defense when he assaulted her.  (<u>Id.</u> at 645, 666-71.)

6   Correctional Officer Richard Cook also testified that Thompson told

7   him, "Fuck you, house nigger, I attacked Panzer." (<u>Id.</u> at 701.)

8   **III.  <u>PROCEDURAL BACKGROUND</u>**

9   On October 25, 2000, the Imperial County District Attorney's

10  Office filed a six-count information charging Petitioner with two

11  counts of assault by a prisoner, a violation of California Penal

12  Code section 4501 (counts one and three), three counts of battery

13  on a non-confined person, a violation of California Penal Code

14  section 4501.5 (counts two, four and six), and one count of

15  possession of a weapon by a prisoner, a violation of Penal Code

16  section 4502(a) (count five).  (Lodgment No. 1, Clerk's Tr., vol.

17  1, 00016-19, Oct. 25, 2000.)  As to each count, the information

18  also alleged that Thompson had two prior serious or violent

19  felonies within the meaning of Penal Code section 667(b)-(i),

20  California's "Three Strikes Law." (<u>Id.</u>)

21  Thompson entered a plea of not guilty by reason of insanity.

22  (Lodgment No. 1, Clerk's Tr., vol. 2, 00257, Jan. 11, 2001.)

23  Criminal proceedings were suspended pursuant to California Penal

24  Code section 1368 after Thompson's appointed counsel expressed

25  concern about his client's competency.  (Lodgment No. 1, Clerk's

26  Tr., vol. 2, 00294, April 11, 2001.)  A jury trial was held on

27  whether Thompson was competent to stand trial, with the jury

28

concluding that he was competent.  (Lodgment No. 1, Clerk's Tr., vol. 2, 00303-04, Sept. 4, 2001.)

On June 13, 2003, a jury trial commenced on the question of Thompson's guilt.  (Lodgment No. 1, Clerk's Tr., vol. 4, 00807, June 13, 2003.)  He was found guilty of all charges except count four, battery on a non-confined person (correctional officer Nicole Panzer).  (Lodgment No. 2, Clerk's Tr., vol. 4, 00905-06, June 30, 2003.)  A jury trial on Thompson's sanity was then conducted, and the jury concluded that he was sane when he committed the crimes alleged in counts three and five, assault by a prisoner and possession of a weapon by a prisoner. (Lodgment No. 1, Clerk's Tr., vol. 4, 00937, July 3, 2003.)  The jury could not reach a verdict on Thompson's sanity, however, as to counts one, two and six, and a mistrial was declared as to those counts.  (Id.)  The trial court subsequently found the allegations of prior strike convictions to be true.  (Lodgment No. 1, Clerk's Tr., vol. 4 at 00937-38.) Thompson was sentenced to twenty-five years to life in prison with the possibility of parole.  (Lodgment No. 1, Clerk's Tr., vol. 4, 00956, Sept. 22, 2003.)

Thompson appealed his conviction on counts three and five to the California Court of Appeal, Fourth Appellate District, Division One.  (Lodgment No. 3, Appellant's Opening Brief, People v. Thompson, No. D042750 (Cal. Ct. App. June 24, 2004).)  His court-appointed appellate attorney raised none of the grounds raised in this federal petition.  The state appellate court affirmed Thompson's conviction in an unpublished opinion filed January 26, 2005. (Lodgment No. 6, People v. Thomspon, No. D042750, slip op. (Cal. Ct. App. Jan. 26, 2005).)

Thompson filed a petition for review in the California Supreme Court on March 7, 2005, which raised two jury instruction claims, neither of which is raised in the current federal petition. (Lodgment No. 7, Pet. for Review, <u>People v. Thompson</u>, S132052 (Cal. Mar. 7, 2005).)  The California Supreme Court denied the petition for review without citation of authority.  (Lodgment No. 8, <u>People v. Thompson</u>, S132052, order (Cal. Apr. 13, 2005).)

Thompson then filed a habeas corpus petition in the Imperial County Superior Court, which that court denied in a brief, unpublished written opinion.  (Lodgment No. 9, <u>Thompson v. Hickman</u>, No. EHC00598 (Imperial County Super. Ct. filed Mar. 3, 2005) (pet.); Lodgment No. 10, <u>In re Thompson</u>, No. EHC00598, order (Imperial County Super. Ct. Mar. 24, 2005).)  Thompson filed a habeas corpus petition in the California Court of Appeal, Fourth Appellate District, Division One, which was denied in an unpublished written opinion.  (Lodgment No. 11, <u>Thompson v. Hickman</u>, No. D046375 (Cal. Ct. App. filed May 5, 2005) (pet.); Lodgment No. 12, <u>In re Thompson</u>, No. D046375, order (Cal. Ct. App. June 20, 2005).)  Finally, he filed a habeas corpus petition in the California Supreme Court, which was denied without comment or citation of authority.  (Lodgment No. 13, <u>Thompson v. Woodford</u>, No. S138987 (Cal. Nov. 18, 2005) (pet.); Lodgment No. 14, <u>In re Thompson</u>, No. S138987, order (Cal. Aug. 30, 2006).)

Thompson initiated this federal habeas corpus action by filing a habeas corpus Petition pursuant to 28 U.S.C. § 2254 on October 13, 2006 [doc. no. 1], and a First Amended Petition on December 26, 2006 [doc. no. 6].  Respondent filed an Answer and a Memorandum of Points and Authorities in Support of the Answer to the First

1   Amended Petition on April 2, 2007 [doc. no. 16], and Thompson filed

2   a Traverse on June 13, 2007 [doc. no. 20].  On October 4, 2007, the

3   Respondent was directed to lodge transcripts of the superior court

4   proceedings under People v. Marsden, 2 Cal. 118, 465 F.2d 44, 84

5   Cal. Rptr. 156 [doc. no. 21].  The requested sealed transcripts

6   were received and are part of this record.

7   **IV.   DISCUSSION**

8          **A.    Scope of Review**

9          Title 28, United States Code, § 2254(a), sets forth the

10  following scope of review for federal habeas corpus claims:

11              The Supreme Court, a Justice thereof, a circuit
            judge, or a district court shall entertain an application
12          for a writ of habeas corpus in behalf of a person in
            custody pursuant to the judgment of a State court only on
13          the ground that he is in custody in violation of the
            Constitution or laws or treaties of the United States.

14

15  28 U.S.C.A. § 2254(a) (West 2006) (emphasis added).  As amended, 28

16  U.S.C. § 2254(d) reads:

17              (d) An application for a writ of habeas corpus on
            behalf of a person in custody pursuant to the judgment of
18          a State court shall not be granted with respect to any
            claim that was adjudicated on the merits in State court
19          proceedings unless the adjudication of the claim –

20                  (1) resulted in a decision that was
                contrary to, or involved an unreasonable
21              application of, clearly established Federal
                law, as determined by the Supreme Court of the
22              United States; or

23                  (2) resulted in a decision that was based
                on an unreasonable determination of the facts
24              in light of the evidence presented in the State
                court proceeding.

25

26  28 U.S.C.A. § 2254(d)(1)–(2) (West 2006) (emphasis added).

27      "AEDPA establishes a 'highly deferential standard for

28  evaluating state-court rulings, which demands that state-court

1   decisions be given the benefit of the doubt.'"  <u>Womack v. Del Papa</u>,

2   497 F.3d 998, 1001 (9th Cir. 2007) (quoting <u>Woodford v. Viscotti</u>,

3   537 U.S. 19, 24 (2002)).  To obtain federal habeas relief, Thompson

4   must satisfy either § 2254(d)(1) or § 2254(d)(2).  <u>See</u> <u>Williams v.</u>

5   <u>Taylor</u>, 529 U.S. 362, 403 (2000).  The Supreme Court interprets

6   § 2254(d)(1) as follows:

> Under the "contrary to" clause, a federal habeas court
> may grant the writ if the state court arrives at a
> conclusion opposite to that reached by this Court on a
> question of law or if the state court decides a case
> differently than this Court has on a set of materially
> indistinguishable facts.  Under the "unreasonable
> application" clause, a federal habeas court may grant the
> writ if the state court identifies the correct governing
> legal principle from this Court's decisions but
> unreasonably applies that principle to the facts of the
> prisoner's case.

13  <u>Williams</u>, <u>id.</u> at 412-13; <u>see also</u> <u>Lockyer v. Andrade</u>, 538 U.S. 63,

14  73-74 (2003).

15      Where there is no reasoned decision from the state's highest

16  court, the Court "looks through" to the underlying appellate court

17  decision.  <u>Ylst v. Nunnemaker</u>, 501 U.S. 797, 801-06 (1991).  If the

18  dispositive state court order does not "furnish a basis for its

19  reasoning," federal habeas courts must conduct an independent

20  review of the record to determine whether the state court's

21  decision is contrary to, or an unreasonable application of, clearly

22  established Supreme Court law.  <u>See</u> <u>Delgado v. Lewis</u>, 223 F.3d 976,

23  982 (9th Cir. 2000) (overruled on other grounds by <u>Lockyer</u>, 538

24  U.S. at 75-76); <u>accord</u> <u>Himes v. Thompson</u>, 336 F.3d 848, 853 (9th

25  Cir. 2003).  A state court, however, need not cite Supreme Court

26  precedent when resolving a habeas corpus claim.  <u>Early v. Packer</u>,

27  537 U.S. 3, 8 (2002).  "[S]o long as neither the reasoning nor the

28  result of the state-court decision contradicts [Supreme Court

1  precedent,]" <u>id.</u>, the state court decision will not be "contrary

2  to" clearly established federal law.   <u>Id.</u>

3  **B.   Analysis**

4      Thompson raises six claims:   (1) His Sixth Amendment rights

5  were violated when his appellate counsel rendered ineffective

6  assistance; (2) his federal due process rights were violated when

7  the trial court refused to permit him to present an entrapment

8  defense; (3) Petitioner's due process rights were violated when the

9  prosecutor failed to follow <u>Brady v. Maryland</u>, 373 U.S. 83, 87

10  (1963), and turn over exculpatory and impeachment material related

11  to the victim; (4) his due process rights to a fair trial were

12  violated by the political power exerted by the prison guards'

13  union; (5) he is actually innocent of the charges; and (6) his

14  Sixth Amendment rights were violated when he was forced to

15  represent himself.  (<u>See</u> Am. Pet. 6-24.)  Respondent argues that

16  the state courts' resolution of the claims was neither contrary to,

17  nor an unreasonable application of, clearly established Supreme

18  Court law.  (<u>See</u> Mem. P. & A. Supp. Answer to Am. Pet. 7-13.)

19      1.   <u>Ineffective Assistance of Appellate Counsel (Claim One)</u>

20      Petitioner appears to contend that he was deprived of the

21  ability to show that, for political and economic reasons, the

22  California Correctional Peace Officers Association had a policy of

23  encouraging members to provoke Black inmates to assault prison

24  guards; these guards followed that policy; and as a result,

25  Thompson was forced to arm himself.  (Traverse 1-2.)  More

26  specifically,  Thompson claims his appellate counsel was

27  ineffective when she failed to (1) argue the trial court erred when

28  it prevented Thompson from presenting a defense based on necessity

or self-defense, (2) argue the trial court erred when it prevented
Thompson from presenting an entrapment or "political" defense, (3)
investigate and present a claim that the prosecution withheld
material exculpatory or impeachment evidence, and (4) argue that
the application of California's Three Strikes Law to Thompson
violated his Eighth Amendment rights.  (See Am. Pet. 7-11.)

Respondent does not address each of Thompson's allegations.
But he does address one:  Respondent contends that appellate
counsel was not ineffective for failing to present a defense based
on Thompson's belief that the prison guards engaged in a concerted
effort to provoke him into attacking them for political reasons,
specifically to support their union's quest for higher pay, because
it was not a legitimate defense to the charges.  (Mem. P. & A.
Supp. Answer to Am. Pet. 8-9.)

The California Supreme Court denied these claims, which
Thompson raised in a habeas corpus petition, with an unexplained
post-card denial.  (See Lodgment No. 14, In re Thomspon, No.
S138987, order.)  Thus, this Court must "look through" to the last
reasoned state court decision to address these claims, the
California appellate court's opinion denying Thompson's habeas
corpus petition.  Ylst, 501 U.S. at 801-06.  That court did not
discuss the merits of Thompson's ineffective assistance of
appellate counsel claim and subclaims.  Instead, it found that
Thompson had not stated a prima facie case for relief because the
only evidence he presented to support his claim was "newspaper
articles and editorials" which were not evidence.  (Lodgment No.
12, In re Thompson, No. D046375, order at 2.)  Even if it could
consider those documents, the court concluded, they did not support

Thompson's claim.  (Id.)  Accordingly, this Court must conduct an independent review of the record to determine whether the silent denial of claim one by the state supreme court and the near-silent denial by the court of appeal were contrary to, or an unreasonable application of, clearly established Supreme Court law.  Delgado, 223 F.3d at 982.

"The proper standard for evaluating [a] claim that appellate counsel was ineffective . . .  is that enunciated in Strickland."  Smith v. Robbins, 528 U.S. 259, 285 (2000) (citing Smith v. Murray, 477 U.S. 527, 535-36 (1986)).  A petitioner must first demonstrate that his appellate counsel's performance fell below an objective standard of reasonableness.  Strickland, 466 U.S. at 688.  He must then establish he was prejudiced by counsel's errors.  Id. at 694.  To establish prejudice, Thompson must show a reasonable probability that he would have prevailed on appeal absent counsel's errors.  Smith, 528 U.S. at 285 (citing Strickland, 466 U.S. at 694).  "The performance component need not be addressed first '[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed."  Id., n.144 (citing Strickland, 466 U.S. at 697).  Finally, counsel's [f]ailure to raise meritless arguments does not constitute ineffective assistance."  Boag v. Raines, 769 F.2d 1341, 1344 (9th Cir. 1985).

    a.   Self-Defense and Necessity Defenses

Thompson contends appellate counsel should have challenged the trial court's refusal to permit him to present evidence to support a defense of necessity or self-defense to count five, the charge of possession of a weapon by an inmate, a violation of California

Penal Code section 4502(a).  (Am. Pet. 8.)  Section 4502(a) prohibits a prisoner from possessing or carrying any "instrument or weapon of the kind commonly known as . . . any dirk or dagger or sharp instrument . . . ."  <u>See</u> Cal. Penal Code § 4502(a) (West 2007).  Thompson claims that "he was forced to arm himself under the dangerous conditions on the yard" which were "exacerbated by the guards fostering racial tension between Blacks/Southern Hispanics . . . ."  (Am. Pet. 8.)  He also alleges that such a defense was supported by evidence presented at a January 2004 California State Senate Hearing that the same behavior by guards was occurring at Avenal State Prison and California State Prison, Sacramento (referred to by Thompson as "New Folsom State Prison"). (<u>Id.</u>)

In California, "[t]he defense of necessity generally recognizes that 'the harm or evil sought to be avoided by [the defendant's] conduct is greater than that sought to be prevented by the law defining the offense charged.'"  <u>People v. Coffman</u>, 34 Cal. 4th 1, 100, 96 P.3d 30, 106, 17 Cal. Rptr. 3d 710, 800 (2004) (quoting <u>People v. Richards</u>, 269 Cal. App. 2d 768, 772, 75 Cal. Rptr. 597, 600-01 (Ct. App. 1969)).  To sustain a defense of necessity, a defendant must present evidence showing the following:

> [T]here must be evidence sufficient to establish that
> defendant violated the law (1) to prevent a significant
> evil, (2) with no adequate alternative, (3) without
> creating a greater danger than the one avoided, (4) with
> a good faith belief in the necessity, (5) with such
> belief being objectively reasonable, and (6) under
> circumstances in which he did not substantially
> contribute to the emergency.

<u>People v. Pepper</u>, 41 Cal. App. 4th 1029, 1035, 48 Cal. Rptr. 2d

06cv2314

877, 880 (Ct. App. 1996) (citing People v. Slack, 210 Cal. App. 3d 937, 940, 258 Cal. Rptr. 702, 704 (Ct. App. 1989)).

Moreover, the defendant must show that the circumstances facing him were of an "emergency nature, threatening physical harm, and lacking an alternative, legal course of action." People v. Eichorn, 69 Cal. App. 4th 382, 389, 81 Cal. Rptr. 2d 535, 539 (Ct. App. 1998); see also Comm. on Cal. Crim. Jury Instructions, California Jury Instructions: Criminal ("CALJIC") No. 4.40 (2007).

California courts have squarely rejected the notion that a prisoner may use the defenses of necessity or self-defense to justify possession of a weapon, particularly when, as here, the prisoner has only a generalized fear of attack.  In People v. Velasquez, 158 Cal. App. 3d 418, 420-21, 204 Cal. Rptr. 640, 642-43 (Ct. App. 1984), the court noted "[t]he purpose of [section 4502] is to protect inmates and officers from assaults with dangerous weapons perpetrated by armed prisoners," and "[this] purpose would be frustrated if prisoners were allowed to arm themselves in proclaimed or actual fear of anticipated attack by other inmates." See also People v. McKinney, 187 Cal. App. 3d 583, 587, 231 Cal. Rptr. 729, 731 (Ct. App. 1986) (concluding that defense of necessity was not available to prisoner charged with assault and explaining that "[v]iolence justified in the name of preempting some future, necessarily speculative threat to life is the greater, not the lesser evil, particularly in the highly volatile environment of a prison institution[]").

Here, the jury was instructed that self-defense was a defense to the assault charge (count three).  (Lodgment No. 2, Rep.'s Tr. vol. 10, 742-43, June 26, 2003.)  CALJIC No. 5.30 defines self-

defense against assault: "[I]f as a reasonable person [he] has ground for believing and does believe that bodily injury is about to be inflicted upon [him]," a defendant "may use all force and means which [he] believes to be reasonably necessary and would appear to a reasonable person, in the same or similar circumstances, to be necessary to prevent the injury which appears to be imminent." <u>See</u> CALJIC No. 5.30.  But the trial court did not give an instruction that self-defense was a defense to <u>possession of a weapon by a prisoner</u> (count five).  (Lodgment No. 2, Rep.'s Tr. vol. 10, 742-43.)  Indeed, it does no appear that this instruction was requested.  (<u>Id.</u> at 710-14, June 26, 2003.)  At best, this claimed defense suffers from the same defects as a necessity defense, which cannot be asserted by a prisoner charged with assault.  <u>See</u> <u>People v. McKinney</u>, 187 Cal. App. 3d at 587, 231 Cal. Rptr. at 731.

For these reasons, appellate counsel's failure to challenge the state court's refusal to instruct the jury that the defenses of necessity and self-defense could be considered in connection with count five was not objectively unreasonable, nor has Thompson shown that he was prejudiced by counsel's alleged errors.  <u>See</u> <u>Smith</u>, 528 U.S. at 285.  The state court's denial of this ground for relief, therefore, was neither contrary to, nor an unreasonable application of, clearly established Supreme Court law.  <u>Williams</u>, 529 U.S. 412-13.

b.   <u>"Political" and Entrapment Defenses</u>

Next, Petitioner claims appellate counsel should have argued the trial court erred when it denied Thompson the opportunity to present an entrapment defense or a political defense.  (Am. Pet.

8.)  Thompson's "political" defense rests on his belief that the CCPOA was systematically instructing its members to increase racial tensions and provoke assaults by prisoners on guards in order to promote and support their political objectives of increased pay and benefits.  (Id. 6-8.)

As Respondent correctly points out, there is no "political defense" in California.  Thus, appellate counsel was not ineffective when she failed to argue that the trial court erred in preventing Thompson from presenting a nonexistent defense.  Smith, 528 U.S. at 285.  Moreover, Thompson has not established the state court's denial of this claim was contrary to, or an unreasonable application of, clearly established Supreme Court law because he has not shown that he would have prevailed had appellate counsel attacked the state court's decision not to permit him to present the defense.  Id.

As to the entrapment defense, California law permits a defendant to assert that he was entrapped into committing a crime by proving, by a preponderance of the evidence, "that the conduct of the law enforcement agents or officers would likely induce a normally law-abiding person to commit the crime."  See CALJIC No. 4.60; People v. Barraza, 23 Cal. 3d 675, 689-90, 591 P.2d 947, 955, 153 Cal. Rptr. 459, 467 (1979).  Although law enforcement officers may provide the opportunity for a defendant to commit a crime by using "reasonable, though restrained, steps to gain the confidence of suspects," law enforcement officers may not "induce the commission of a crime by overbearing conduct such as badgering, coaxing or cajoling, importuning, or other affirmative acts likely

06cv2314

1   to induce a normally law-abiding person to commit the crime."   <u>See</u>
2   CALJIC No. 4.61.5.

3       Under California law, "[a] trial court has no duty to instruct
4   the jury — even at the defendant's request — unless the defense is
5   supported by substantial evidence." <u>People v. Curtis</u>, 30 Cal. App.
6   4th 1337, 1355, 37 Cal. Rptr. 2d 304, 314 (Ct. App. 1994) (citing
7   <u>People v. Flannel</u>, 25 Cal. 3d 668, 684-85, 160 Cal. Rptr. 84, 93,
8   603 P.2d 1, 10 (1979)).  Thompson contends that prison guards
9   entrapped him into committing the assaults on Vega and Panzer by
10  engaging in a coordinated effort to foster racial enmity and
11  conflict between African-Americans and Hispanics.  (<u>See</u> Am. Pet. 8-
12  9; Lodgment No. 2, Rep.'s Tr., vol. 10, 712-13.)  Even if the Court
13  were to assume that Thompson could present some evidence that
14  supported his contention, it would not constitute substantial
15  evidence that he was entrapped.

16      Petitioner was not a "normally law-abiding citizen," but
17  rather a state prisoner convicted of violent crimes and combative
18  behavior in prison.  (Lodgment No. 2, Rep.'s Tr., vol. 10, 616-19.)
19  Thompson testified that Officer Vega denied him showers; Officer
20  Panzer hit him in the face; and at the time of the assault on Vega,
21  Thompson was aware of an investigation being conducted at Corcoran
22  and Pelican Bay concerning the prison guards' union's "perpetuating
23  violence and exploiting inmates" for the union's benefit.
24  (Lodgment No. 2, Rep.'s Tr., vol. 9, 591-97, 601, 607-08.)  This
25  evidence may have been relevant to self-defense, but the state
26  trial court reasonably concluded that there was not substantial
27  evidence to justify an entrapment instruction.  This Court agrees.
28  Accordingly, appellate counsel's decision not to raise this claim
    was not objectively unreasonable.  <u>Smith</u>, 528 U.S. at 285.

In addition, Thompson has not established he was prejudiced by appellate counsel's alleged error because he has not shown a reasonable probability that the result of the proceeding would have been different had appellate counsel raised this issue.  There is little likelihood the jury would have concluded Thompson was entrapped into assaulting Panzer.  A normally law-abiding citizen would not be induced to stab a person with a sharp instrument, choke a person, or bite a person under the circumstances of this case.

For the foregoing reasons, the state court's denial of this claim was neither contrary to, nor an unreasonable application of, clearly established Supreme Court law.  <u>Williams</u>, 529 U.S. at 412-13.  Petitioner is not entitled to relief.

c.   <u>Exculpatory and Impeachment Evidence Under Brady</u>

Thompson also alleges that appellate counsel should have investigated his <u>Brady</u> claim that the CCPOA was directing its members to provoke assaults by prisoners on guards as a way to support their drive for higher pay and that the guards were lying about their motives and actions.  (Am. Pet. 8-9.)  As discussed above, there is no political defense to the charges Thompson faced, and appellate counsel's decision not to pursue this defense was not objectively unreasonable.  <u>Smith</u>, 528 U.S. at 285.

Petitioner argues that appellate counsel should have investigated specific allegations of perjury, false statements or provocative actions by Vega and Panzer, but Thompson does not specify what evidence appellate counsel would have discovered had she conducted additional investigation and how it would have affected his appeal.  Petitioner's references to the subsequently

1    produced "Hagar Report", (see Traverse 8-9), are insufficient to

2    show that his counsel's failure to pursue the CCPOA's activities

3    adversely affected his case.  Accordingly, he has not established

4    prejudice.  See Smith, 528 U.S. at 285.

5        Moreover, appellate counsel did ask the state appellate court

6    to review the personnel files which were delivered to the trial

7    court in response to trial counsel's Pitchess[3] motion to determine

8    whether there was any evidence relevant to Thompson's defense and

9    whether the trial court properly ruled on the motion. (See Lodgment

10   No. 3, Appellant's Opening Brief at 32-38, People v. Thompson, No.

11   D042750.)  The appellate court examined the files and concluded

12   "[t]here was only one complaint of excessive force and the trial

13   court provided disclosure of this complaint."  (Lodgment No. 6,

14   People v. Thomspon, No. D042750, slip op. at 6-7.)

15       Thompson claims that appellate counsel asked the appellate

16   court to review the wrong Pitchess motion, contending that she

17   should have asked for review of the Pitchess motion filed by

18   Thompson after he began representing himself.  (Am. Pet. 10.)  The

19   trial court denied the second motion because Thompson's former

20   counsel had already filed a Pitchess motion which had been ruled on

21   by another judge, and Thompson could not relitigate the Pitchess

22   issues by simply filing a second motion.  (Lodgment No. 2, Rep.'s

23   Tr., vol. 1, 15-17, Apr. 23, 2003.)

24

25        [3] In Pitchess v. Superior Court, 11 Cal. 3d 531, 522 P.2d 305, 113 Cal.
     Rptr. 897 (1974), the California Supreme Court held that a defendant may
26   move to discover information contained in law enforcement officers'
     personnel files which is relevant to issues in the current case, such as
27   prior incidents of falsifying information or coercing witnesses.  The judge
     then conducts an in camera review of the files to determine if any
28   discoverable information is contained in the files.  Any relevant evidence
     is then turned over to the defendant.  See Pitchess, 11 Cal. 3d 531, 536,
     522 P.2d at 309, 113 Cal. Rtpr. at 901; see also Cal. Evid. Code §§ 1043-
     1046 (West 2007).

                                    -19-                            06cv2314

The Court has reviewed the <u>Pitchess</u> motion filed by Thompson's former counsel and the <u>Pitchess</u> motion filed by Thompson.  Both ask for any evidence of excessive force by Panzer as well as personnel, psychological and psychiatric records.  (<u>See</u> Lodgment No. 1, Clerk's Tr., vol. 1, 00078-92, Nov. 14, 2000; Lodgment No. 1, Clerk's Tr., vol. 3, 00727-34, Mar. 26, 2003.)  In fact, Thompson's motion is not as thorough as the <u>Pitchess</u> motion filed by counsel. (<u>Id.</u>)  But, in his motion, Petitioner seeks information relating to any benefits Officer Panzer received from the union.  (Lodgment No. 1, Clerk's Tr., vol. 3, 00722-28.)

Nevertheless, Thompson has not established he was prejudiced by counsel's alleged error.  He has not shown he would have prevailed had appellate counsel challenged the trial court's denial of the second <u>Pitchess</u> motion.  The appellate court examined police personnel records and determined that relevant information was disclosed by the trial court.  (Lodgment No. 6, <u>People v. Thompson</u>, D042750, slip op. at 7.)  For the foregoing reasons, the state court's denial of this claim was neither contrary to, nor an unreasonable application of, clearly established Supreme Court law. <u>Williams</u>, 529 U.S. at 412-13.

    d.   Eighth Amendment

Finally, Petitioner argues his appellate counsel rendered ineffective assistance by failing to argue that the application of California's Three Strikes law to him violated the Eighth Amendment's Cruel and Unusual Punishments Clause.  (Am. Pet. 9.)

In <u>Lockyer v. Andrade</u>, the Supreme Court concluded that the only clearly established legal principle which could be discerned from the Supreme Court's Eighth Amendment jurisprudence was that

"[a] gross disproportionality principle is applicable to sentences for a term of years . . . the precise contours of which are unclear, [and which is] applicable only in the 'exceedingly rare' and 'extreme' case." <u>Andrade</u>, 538 U.S. at 72-73 (citing <u>Harmelin v. Michigan</u>, 501 U.S. 957, 1001 (1991)).  The Supreme Court also explained that "the governing legal principle gives legislatures broad discretion to fashion a sentence that fits within the scope of the proportionality principle –- the 'precise contours' of which 'are unclear.'" <u>Id.</u> at 76 (quoting <u>Harmelin</u>, 501 U.S. at 998.) Because of this, "[t]he gross disproportionality principle reserves a constitutional violation for only the extraordinary case." <u>Id.</u> at 77.

Thompson has not established a reasonable probability that he would have prevailed on an Eighth Amendment claim had appellate counsel raised one, as required by <u>Smith</u>.  528 U.S. at 285.  In <u>Rummel v. Estelle</u> 445 U.S. 263 (1980), the Supreme Court held that a sentence of life imprisonment for a defendant who was convicted of obtaining $120.75 by false pretenses and who had two prior theft-related convictions did not violate the Eighth Amendment because Rummel would be eligible for parole in twelve years and the sentence was not solely the result of his current minor theft crime, but was premised on Rummel's recidivism.  <u>Id.</u> at 267, 284-85.  In <u>Solem v. Helm</u>, 463 U.S. 277 (1983), the Court found a mandatory term of life in prison without parole for writing a "no account" check for $100.00 and having three prior convictions violated the Eighth Amendment's proportionality requirement. <u>Solem</u>, 463 U.S. at 281-83.

Like the defendant in <u>Rummel</u>, and unlike the defendant in <u>Solem</u>, Thompson will be eligible for parole after serving twenty-five years. (Lodgment No. 1, Clerk's Tr., vol. 4, 00956, Sept. 22, 2003.) Moreover, like <u>Rummel</u>, Thompson's sentence of twenty-five years to life is not solely the result of his current conviction but is because of his recidivism. <u>See</u> <u>Rummel</u>, 445 U.S. at 284-85. Petitioner had two prior violent "strike" convictions when he committed the crimes he was convicted of in this case. (Lodgment No. 1, Clerk's Tr., vol. 4, 00937-38, July 3, 2003.)

Thompson's criminal record is more serious than the defendants' records in <u>Rummel</u>, <u>Solem</u>, and <u>Andrade</u>. Rummel's prior convictions were for fraudulent use of a credit card and passing a forged check. <u>Rummel</u>, 445 U.S. at 265-66. Helm's prior convictions were for burglary, obtaining money by false pretenses, grand larceny, and driving while intoxicated. <u>Solem</u>, 463 U.S. at 279-80. Andrade's prior convictions were for misdemeanor theft offenses, residential burglary, transportation of marijuana, petty theft and escape from a federal prison. <u>Andrade</u>, 270 F.3d at 765-66. In contrast, Thompson's prior convictions were for carjacking and assault with a firearm. (<u>See</u> Lodgment 1, Clerk's Tr., vol. 1, 00016-20.)

The Ninth Circuit, in <u>Ramirez v. Castro</u>, 365 F.3d 755 (9th Cir. 2004), gave this Court some guidance as to the kind of "exceedingly rare" Eighth Amendment claim that warrants federal habeas relief. In <u>Ramirez</u>, the court concluded that a sentence of twenty-five years to life for a nonviolent shoplifting of a $199.00 VCR, where the defendant's prior convictions were two nonviolent second degree robberies, violated the Eighth Amendment. <u>Ramirez</u>,

365 F.3d at 775.  Ramirez's prior robberies did not involve
weapons, and the "force" in both was minimal.  Id. at 768.  The
one-year jail term Ramirez received for the two robberies was also
indicative of the less-than-serious nature of the offenses, and it
"was the only period of incarceration ever imposed upon Ramirez
prior to his Three Strikes sentence."  Id. at 769.  Comparing
Ramirez's case to Rummel, Solem and Andrade, the court concluded
that "this [was] the extremely rare case that gives rise to an
inference of gross disproportionality."  Id. at 770.  After
conducting intra- and interjurisdictional comparisons of Ramirez's
sentence, the court found that the state court's decision to uphold
Ramirez's sentence was an objectively unreasonable application of
clearly established Supreme Court law.  Id. at 770-73.  Ramirez's
case was one of the rare cases entitled to habeas relief.  Id. at
775.

   Thompson's prior convictions are much more serious than those
in Ramirez.  Although Thompson's two prior "strike" convictions
arose out of one incident, they were violent crimes involving a
firearm.[4]  (Lodgment No. 1, Clerk's Tr., vol. 1, 00016-20; Lodgment
No. 1, Clerk's Tr., vol. 4, 00937-038.)  In contrast to the one-
year sentence Ramirez received, Thompson was serving a multiple-
year sentence at the time of the current offenses and had been
involved in several instances of mutual combat while in prison.
(Lodgment No. 2, Rep.'s Tr., vol 10, 616-19.)  In short,
Petitioner's case is not the extremely rare case which gives rise
to an inference of disproportionality.  See Ramirez, 365 F.3d at

---

[4]  Thompson also admitted that he had been found guilty of several
mutual combat violations while in prison.  (Lodgment No. 2, Rep.'s Tr., vol.
9, 569-70.)

770.  Counsel's failure to raise an Eighth Amendment claim,
therefore, was not objectively unreasonable.  <u>Smith</u>, 528 U.S. at
285.  Nor has Thompson established he was prejudiced by his
appellate attorney's failure to raise an Eighth Amendment challenge
to his sentence because he has not established a reasonable
probability he would have prevailed.  <u>Id.</u>

    2.   <u>Denial of Entrapment Instructions (Claim Two)</u>

    Petitioner argues that the state trial court violated his
federal constitutional rights by refusing to give entrapment
instructions to the jury.  (Am. Pet. 12-13.)  Respondent states
that this is merely a reassertion of Thompson's claim that he had a
right to present a political defense to the charges, and no such
defense exists in California law.  (Mem. P. & A. Supp. Answer to
Am. Pet. 9-10.)

    This Court must look through the California Supreme Court's
unexplained denial of Thompson's habeas corpus petition to the
California Court of Appeal's written opinion denying this claim.
<u>Ylst</u>, 501 U.S. at 801-06.  The state appellate court did not
specifically address this ground for relief, stating simply that
Thompson had not presented a prima facie case.  (Lodgment No. 12,
<u>In re Thompson</u>, No. D046375, order.)  Thus, this Court must conduct
an independent review of the record to determine whether the state
court's denial of this claim was contrary to, or an unreasonable
application of, clearly established Supreme Court law.  <u>Delgado</u>,
223 F. 3d at 982.

    The failure to give a jury instruction on the defense theory
of a case rises to the level of a federal due process violation "if
the theory is legally sound and evidence in the case makes it

06cv2314

1   applicable." Beardslee v. Woodford, 358 F.3d 560, 577 (9th Cir.
2   2004) (as amended). In a § 2254 proceeding, the petitioner must
3   show that the alleged instructional error "had substantial and
4   injurious effect or influence in determining the jury's verdict."
5   Brecht v. Abrahamson, 507 U.S. 619, 637 (1993) (quoting Kotteakos
6   v. United States, 328 U.S. 750, 776 (1946)). The failure to give a
7   requested instruction must be considered in the context of the
8   entire trial record and the instructions as a whole. Estelle v.
9   McGuire, 502 U.S. 62, 71-71 (1991); see also Gilmore v. Taylor, 508
10  U.S. 333, 343-44 (1993) (finding that the right to present a
11  complete defense does not entitle a defendant to a particular set
12  of jury instructions). "The burden on the habeas petitioner is
13  'especially heavy' where, as here, the alleged error involves the
14  failure to give an instruction." Clark v. Brown, 442 F.2d 708, 714
15  (9th Cir. 2006) (citing Hendricks v. Vasquez, 974 F.2d 1099, 1106
16  (9th Cir. 1992) (as amended) (quoting Henderson v. Kibbe, 431 U.S.
17  145, 155 (1977)).

18      As discussed above, in order to establish that he was
19  entrapped into committing a crime, Thompson would have to prove by
20  a preponderance of the evidence "that the conduct of the law
21  enforcement agents or officers would likely induce a normally
22  law-abiding person to commit the crime." See CALJIC No. 4.60;
23  Barraza, 23 Cal. 3d at 689-90, 591 P.2d at 955, 153 Cal. Rptr. at
24  467. Thompson was not a normally law-abiding person, having been
25  convicted of carjacking, assault with a firearm and several rules
26  violations in prison for mutual combat. (Lodgment No. 2, Rep.'s
27  Tr., vol. 10, 616-19.) His entrapment argument is based on the
28  claim that the CCPOA was directing its members to engage in racial

harassment and provoke assaults by prisoners.  The only evidence
that Vega or Panzer badgered, cajoled, importuned or otherwise
enticed Thompson into committing the assaults was his contention
that Vega had denied him showers.  This would not induce a normally
law-abiding citizen to assault someone with a sharp instrument or
choke them.

Thompson appears to view "entrapment" and "self-defense
against assault" as interchangeable.  The evidence did not warrant
an instruction on the former, but the trial court did give an
instruction on the latter, which was warranted because Thompson
claimed that Panzer hit him.  Still, there was insufficient
evidence to support an entrapment instruction.  See Beardslee, 358
F.3d at 577.

In Petitioner's case, there is no likelihood that the failure
to give an entrapment instruction had a substantial and injurious
effect on the jury's verdict.  See Brecht, 507 U.S. at 637.  Given
Thompson's criminal history and the fact that Thompson claims he
was entrapped or induced into assaulting Vega and Panzer as a
result of being denied showers or a concerted effort by the CCPOA
to provoke assaults by inmates, it is highly unlikely the jury
would have applied the entrapment defense to him and acquitted him.
Thus, the state court's denial of this claim is neither contrary
to, nor an unreasonable application of, clearly established Supreme
Court law.  Williams, 529 U.S. at 412-13.

3.   Prosecutorial Misconduct (Claim Three)

Thompson asserts his due process rights were violated when the
prosecutor failed to investigate his claims that prison guards were
provoking assaults by inmates at the direction of the CCPOA in

order to promote the union's political and economic goals.  (Am.

Pet. 14-16.)  He relies on Brady v. Maryland, 373 U.S. 83, as

support for his argument.  (Id. at 14.)  Respondent counters that,

under Brady, "[t]here is no duty to disclose evidence that is

speculative."  (Mem. P. & A. Supp. Answer to Am. Pet. 10-11.)

The California Supreme Court denied this claim, which

Thompson raised in a habeas corpus petition, with an unexplained

post-card denial.  (See Lodgment No. 14, In re Thomspon, No.

S138987, order.)  This Court must look to the last reasoned state

court decision to address these claims, the California appellate

court's opinion denying Thompson's habeas corpus petition.  Ylst,

501 U.S. at 801-06.  As with Thompson's preceding claims, that

court did not specifically address Petitioner's prosecutorial

misconduct claim.  Instead, it found that Thompson had not stated a

prima facie case for relief.  (Lodgment No. 12, In re Thompson, No.

D046375, order.)  Consequently, this Court must conduct an

independent review of the record to determine whether the state

courts' denial of the claim was contrary to, or an unreasonable

application of, clearly established Supreme Court law.  Delgado,

223 F.3d at 982.

In Brady, the Supreme Court held that a prosecutor must

disclose all material evidence, including impeachment evidence, to

the defendant.  Brady, 373 U.S. at 87.  In order to establish a

Brady violation, Petitioner must show (1) the evidence was

suppressed by the prosecution, either willfully or inadvertently;

(2) the withheld evidence was exculpatory or impeachment material;

and (3) he was prejudiced by the failure to disclose.  See

Strickler v. Greene, 527 U.S. 263, 281-82 (1999); Benn v. Lambert,

283 F.3d 1040, 1052-53 (9th Cir. 2002) (citing <u>United States v.</u>
<u>Bagley</u>, 473 U.S. 667, 676, 678 (1985), and <u>United States v. Agurs</u>,
427 U.S. 97, 110 (1976).)

a.   <u>Suppression by Prosecution</u>

Thompson must demonstrate that the prosecutor willfully or
inadvertently suppressed evidence.  <u>Strickler</u>, 527 U.S. at 281-82.
Petitioner does not argue that the prosecutor possessed evidence
supporting Thompson's suspicions about the CCPOA's activities which
was not turned over to the defense.  Rather, he argues the
prosecutor should have conducted his own investigation of
Thompson's claims.  (Am. Pet. 14.)  He does not allege, nor does
he provide any evidence, that the prosecutor *withheld* any evidence
which he possessed or to which he had access.

In his Amended Petition, Thompson refers to "the prosecutor's
obligation to turn over exculpatory information (i.e., the Hagar
Report)" and refers to the habeas petition Thompson filed in
superior court.  (<u>Id.</u> at 16.)  That superior court filing includes
a September 26, 2003, article from the <u>Los Angeles Daily Journal</u>,
which in turn refers to hearings being conducted by John Hagar, a
federal court-appointed monitor.  (Lodgment No. 9, <u>Thompson v.</u>
<u>Hickman</u>, EHC 00598, Mem. at 4.)  There is no evidence that the
Hagar Report existed when Thompson's trial began on June 13, 2003.
(Lodgment No. 1, Clerk's Tr., vol. 4, 00807, June 13, 2003.)  In
fact, Petitioner alleges that the report was released in January of
2004.  (Am. Pet. 21.)  Even if the report existed during Thompson's
criminal proceedings, "[t]here is no <u>Brady</u> violation if the
'defendants, using reasonable diligence, could have obtained the
information' themselves."  <u>Westley v. Johnson</u>, 83 F.3d 714, 726

1   (5th Cir. 1996).  As Respondent points out, the existence of any
2   evidence to support Thompson's allegations about the prison guards'
3   union is speculative at best.  Tying Thompson's theory to Officer
4   Panzer and the other correctional officers requires an additional
5   leap of faith.  Accordingly, no evidence was suppressed, and
6   Thompson has not satisfied this prong of <u>Brady</u>.  This, alone,
7   precludes habeas relief on Thompson's third claim, which suffers
8   from other shortcomings.

9           b.   <u>Exculpatory or Impeachment Evidence</u>

10          Petitioner has not established the claimed evidence had
11  exculpatory or impeachment value.  "Exculpatory evidence includes
12  material that goes to the heart of the defendant's guilt or
13  innocence, as well as that which might alter the jury's judgment of
14  the credibility of a crucial prosecution witness."  <u>United States</u>
15  <u>v. Starusko</u>, 729 F.2d 256, 260 (3d Cir. 1984.)  The evidence the
16  prosecution failed to turn over must be relevant to an actual,
17  valid defense to the charges Thompson faced, such as evidence
18  Thompson was defending himself against an assault by Panzer when he
19  attacked her.  "[E]vidence is material only if there is a
20  reasonable probability that, had the evidence been disclosed to the
21  defense, the result of the proceeding would have been different.  A
22  'reasonable probability' is a probability sufficient to undermine
23  confidence in the outcome."  <u>United States v. Bagley</u>, 473 U.S. at
24  682.  Petitioner's assertions that the CCPOA was encouraging its
25  membership to provoke assaults by inmates in order to support the
26  union's political and economic goals was neither material nor
27  exculpatory because it was too remote to support any recognized
28  defense in California.

1    The material Thompson alleges the prosecution should have

2   turned over does not rise to the level of impeachment evidence.

3   Impeachment evidence is evidence which calls into question the

4   veracity or accuracy of a witness's testimony.   <u>See</u> <u>United States</u>

5   <u>v. Savory</u>, 832 F.2d 1011, 1017 (9th Cir. 1987); Black's Law

6   Dictionary (6th Ed. 1990).

7           When determining whether impeachment evidence . . . is
            material under <u>Brady</u>, the undisclosed impeachment
8           evidence cannot be viewed in isolation.  Rather, the
            impeachment evidence must be viewed in context, alongside
9           the witness's testimony, in light of any other
            impeachment evidence, and in light of corroborating
10          evidence that bears on the witness's credibility.

11  <u>Pederson v. Fabian</u>, 491 F.3d 816, 826 (8th Cir. 2007).  General

12  references to misconduct and corrupt prison guards does not

13  constitute impeachment evidence against Officer Panzer or other

14  officers who testified at Thompson's trial.  Petitioner's belief

15  that the CCPOA was directing guards to provoke assaults by inmates

16  was irrelevant.  Thompson has failed to show that material

17  exculpatory or impeaching evidence was in existence.

18       Besides arguing that the prosecutor should have investigated

19  Thompson's claims about the CCPOA, he complains that the prosecutor

20  withheld Panzer's "medical reports." (Am. Pet. 16.)  Yet, there is

21  nothing to show that the documents contain impeachment or

22  exculpatory evidence. (<u>See</u> Lodgment No. 6, <u>People v. Thompson</u>,

23  D042750, slip op. at 7.)  Petitioner's claim does not satisfy this

24  <u>Brady</u> requirement.

25       c.   <u>Prejudice</u>

26       Finally, Thompson has not established prejudice.  As discussed

27  previously in this Report and Recommendation, a political defense

28  to the charges Thompson faced is not available in California.

1  Thus, allegations that the prison guards' union was directing
2  guards to provoke assaults by inmates were not material to the
3  charges Thompson faced.  There is no evidence to tie Petitioner's
4  speculation to the guards who were victims or witnesses to
5  Thompson's acts.  His claim is insufficient to establish that the
6  prosecutor should have investigated union activities which might
7  have led to admissible evidence that, if disclosed to the defense,
8  would have led to a reasonable probability that the result in
9  Petitioner's case would have been different.  See Downs v. Hoyt,
10  232 F.3d 1031, 1037 (9th Cir. 2000).  The absence of prejudice
11  precludes relief.
12       d.   Conclusion
13       Thompson has not shown any of the three prongs necessary to
14  establish a claim under Brady.  See Brady, 373 U.S. 83.
15  Accordingly, the Court concludes the state court's denial of
16  Thompson's Brady claim was neither contrary to, nor an unreasonable
17  application of, clearly established Supreme Court law.  Williams,
18  529 U.S. at 412-13.
19       4.   Unlawful Influence by Prison Guards' Union (Claim Four)
20       Thompson argues that CCPOA's political influence prevented the
21  court from properly administering justice in the case."  (Am. Pet.
22  17-19.)  Essentially, Petitioner blames the CCPOA for exerting
23  political pressure on the court and his counsel, and as a result,
24  he was unable to present evidence of the CCPOA's policy and
25  practice of encouraging its members to provoke assaults by inmates
26  as a way of supporting the union's political and economic goals.
27  (Id.)
28

In the Answer to the First Amended Petition, the Respondent states that all claims were raised in the California Supreme Court and are exhausted. (See Answer 2.) The Court has reviewed the habeas corpus petition Thompson filed in the California Supreme Court, and this claim does not appear to be among the grounds for relief raised by Thompson. (See Lodgment No. 13, Thompson v. Woodford, No S138987, pet. at 1-6.) Even if claims are unexhausted, this Court may deny them "where[, as here], it is perfectly clear that the applicant does not raise even a colorable federal claim." Cassett v. Stewart, 406 F.3d 614, 624 (9th Cir. 2005); see 28 U.S.C. § 2254(b)(2). Because there is no state court decision to which this Court can defer, the Court must conduct a de novo review of the claim. Pirtle v. Morgan, 313 F.3d 1160, 1167 (9th Cir. 2002).

In support of his Petition, Thompson has submitted a set of exhibits which contain the following: (1) public documents detailing the structure of CCPOA, its expenditures on lobbying efforts, and contributions by union members and others; (2) a copy of a California Assembly bill providing for the construction of new prisons; (3) copies of documents related to expenditures made on improvements to Centinela State Prison; (4) a copy of a report on inmate incidents in California prisons, dated calendar year 2000, from the California Department of Corrections; (5) copies of newspaper articles regarding California's Three Strikes law and the lobbying activities of the CCPOA; and (6) a copy of the reporter's transcript of the July 5, 2002, hearing in which Thompson sought to remove his counsel pursuant to People v. Marsden, 2 Cal. 3d 118,

465 P.2d 44, 84 Cal. Rptr. 156 (1970).[5]  (See Pet'rs Exs. Supp.
Traverse.)  These documents, some of which precede his trial and
others which follow it, do not establish Thompson's claim that the
wide-ranging conspiracy exists.  At most, they suggest that the
CCPOA wields substantial political influence and that some prison
guards are corrupt.  Respondent is correct that there is simply no
evidence in the record that supports Petitioner's claim that the
union's corruption of the judicial system deprived him of a fair
trial.  Thompson is not entitled to habeas relief for this claim.

> 5.   Actual Innocence (Claim Five)

Thompson claims he is actually innocent of the charges of
which he was convicted.  (Am. Pet. 20-22.)  Respondent counters
that "[a]ctual innocence means factual innocence," and the record
amply supports a conclusion that Thompson is guilty of the crimes
for which he was convicted.  (Mem. P. & A. Supp. Answer to Am. Pet.
11.)

Like the preceding claim, it is unclear whether this ground
for relief claim was included in Thompson's habeas corpus petition
filed in the California Supreme Court.  Nevertheless, even if the
claim is unexhausted, this Court may deny it "where[, as here], it
is perfectly clear that the applicant does not raise even a
colorable federal claim."  Cassett, 406 F.3d at 624; see 28 U.S.C.
§ 2254(b)(2).  Because there is no state court decision to which
this Court can defer, the Court must conduct a de novo review of
the claim.  Pirtle, 313 F.3d at 1167.

---

[5] In Marsden, the California Supreme Court held that a defendant who
is represented by appointed counsel may move to have counsel removed and
appoint substitute counsel.  Marsden, 2 Cal. 3d at 123-24, 465 P.2d at 47-
48, 84 Cal. Rptr. at 159-60.

In <u>Herrera v. Collins</u>, 506 U.S. 390 (1993), a majority of the United States Supreme Court assumed without explicitly deciding that the execution of an innocent person would violate the Constitution, but the Court did not specify what kind of showing a habeas petitioner would have to make to successfully present such a claim. <u>Herrera</u>, 506 U.S. at 400. <u>Herrera</u> noted that "[c]laims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding." <u>Id.</u> The Ninth Circuit has concluded that <u>Herrera</u> requires a petitioner making a "freestanding claim of innocence" to affirmatively prove he is probably innocent. <u>Turner v. Calderon</u>, 281 F.3d 851, 872 (9th Cir. 2002); <u>Carriger v. Stewart</u>, 132 F.3d 463, 476 (9th Cir. 1997). "'[A]ctual innocence' means factual innocence, not mere legal insufficiency." <u>Bousley v. United States</u>, 523 U.S. 614, 623 (1998).

Thompson has not "affirmatively proved he is probably innocent" of the charges of which he was convicted, and indeed, there is more than sufficient evidence in the record that proves his guilt. See <u>Carriger</u>, 132 F.3d at 476. Thompson was found guilty of an assault on Panzer and possession of a weapon by a prisoner. (Lodgment No. 1, Clerk's Tr., vol. 4, 00937-38.) Petitioner admitted possessing the weapon, attacking Vega with it, and choking Panzer. (Lodgment No. 2, Rep.'s Tr., vol. 10, 622-24, 628, 635, 644, 668-73.) Thompson denied grabbing Panzer's breast and biting Wilson, but Panzer testified Thompson grabbed her breast while he was choking her, and Panzer, Wilson and Correctional Officer Brian Clark testified Thompson bit Wilson as he tried to

06cv2314

1   pull him off of Panzer.  (Lodgment No. 2, Rep.'s Tr., vol. 7, 333,

2   362, 370; Lodgment No. 2, Rep.'s Tr., vol. 8, 412.)[6]  This evidence

3   is sufficient for this Court to conclude that Petitioner has not

4   established he is probably innocent of the charges for which he was

5   convicted.  See Turner, 281 F.3d at 872.  Thompson has not

6   established his freestanding claim of innocence nor has he

7   established actual innocence based upon newly discovered evidence

8   in a criminal proceeding infected by a constitutional violation.

9   See Turner, id.  The fifth ground for relief fails.

10      6.    Involuntary Waiver of Counsel/Right to Conflict-Free

11            Counsel (Claim Six)

12      In his sixth ground for relief, Thompson argues that political

13   influences created a conflict of interest between himself and

14   counsel, and counsel refused to present the political defense

15   Thompson wanted.  (Am. Pet. 23.)  As a result, his decision to

16   represent himself was not voluntary.  (Id.)  Respondent contends

17   that "[w]hether styled as a self-representation claim under Faretta

18   v. California, 422 U.S. 806, or as a conflicted counsel claim,

19   there is no indication Petitioner's decision to represent himself

20   was not voluntary."  (Mem. P. & A. Supp. Answer to Am. Pet. 12.)

21      The California Supreme Court denied this claim, which

22   Thompson raised in a habeas corpus petition, with an unexplained

23   post-card denial.  (See Lodgment No. 14, In re Thomspon, No.

24   S138987, order.)  This Court must "look through" to the last

25   reasoned state court decision to address the claim, the California

26   appellate court's opinion denying Thompson's habeas corpus

27

28      _____
        [6] Thompson was found not guilty of a battery on Panzer.  (Lodgment No.
        1, Clerk's Tr., vol 4, 00906.)

petition.  <u>Ylst</u>, 501 U.S. at 801-06.  That court did not specifically discuss Thompson's involuntary waiver of counsel claim.  (Lodgment No. 12, <u>In re Thompson</u>, No. D046375, order.) This Court must therefore conduct an independent review of the record to determine whether the state courts' denial of the claims was contrary to, or an unreasonable application of, clearly established Supreme Court law.  <u>Delgado</u>, 223 F.3d at 982.

a.    <u>Involuntary Waiver of Counsel</u>

Under the Sixth and Fourteenth Amendments, a defendant has the right to represent himself.  <u>See</u> <u>Faretta</u>, 422 U.S. at 819-20.  If a defendant waives counsel and chooses to represent himself, the waiver must be "knowing, voluntary and intelligent," and he "must be warned specifically of the hazards ahead."  <u>Iowa v. Tovar</u>, 541 U.S. 77, 88-89 (2004) (citing <u>Faretta</u>, 422 U.S. at 806).  A waiver is intelligent if "the defendant 'knows what he is doing and his choice is made with eyes open.'"  <u>Id.</u> (quoting <u>Adams v. United States ex rel. McCann</u>, 317 U.S. 269, 279 (1942)).  No formal script is required, but courts should consider "a range of case-specific factors, including the defendant's education or sophistication, the complex or easily grasped nature of the charge, and the stage of the proceeding."  <u>Id.</u> at 88-89 (citing <u>Johnson v. Zerbst</u>, 304 U.S. 458, 464 (1938)).

Thompson unsuccessfully moved under <u>Marsden</u> and <u>Faretta</u> to dismiss his attorney and represent himself twice before the court agreed to do so.  (<u>See</u> Lodgment No. 1, Clerks's Tr., vol. 2, 00404, Feb. 8, 2002; Lodgement No. 1, Clerk's Tr., vol. 2, 0041, May 1, 2002.)  On his third attempt, the Court granted the <u>Marsden</u> motion, relieved counsel, tentatively appointed another attorney for

Thompson, and continued the matter for Thompson to decide whether he wanted to represent himself. (Lodgment No. 1, Clerk's Tr., vol. 3, 00536, July 11, 2002.)

After Thompson indicated he wanted to represent himself, the trial judge conducted a <u>Faretta</u> hearing, the transcript of which is sealed. (<u>Id.</u>) At the conclusion of the July 11, 2002, hearing, the court granted Thompson's <u>Faretta</u> motion.[7] (<u>Id.</u>) Petitioner asserts that the transcripts of these proceedings support this claim and urges the Court to consider them. (Traverse 12.)

The Court has read the sealed transcripts of the <u>Marsden</u> and <u>Faretta</u> hearings. Based on a thorough review of the record, Thompson's waiver of counsel was voluntary, knowing and intelligent. The transcript reflects that Thompson understood the charges, the sentence he faced, and the basics of the legal system. Thompson was warned of the dangers of representing himself. The trial court weighed all these factors, including Petitioner's education, intelligence, and the stage of the proceedings. This is all that <u>Faretta</u> requires. <u>See</u> <u>Iowa v. Tovar</u>, 541 U.S. at 88-89. Accordingly, the state court's decision to deny this claim was neither contrary to, nor an unreasonable application of, clearly established Supreme Court law. <u>See</u> <u>Williams</u>, 529 U.S. at 412-13.

b.   <u>Right to Conflict-Free Counsel</u>

Thompson also appears to claim that there was a "conflict of interest with counsel" due to defense counsel's refusal to put on Thompson's political defense and the union's political influence. (Am. Pet. 23.) A criminal defendant has a Sixth Amendment right to

---

[7] Thompson was later granted standby counsel, Lee Plummer. (<u>See</u> Lodgment No. 2, Rep.'s Tr., vol. 1, 4, April 23, 2003.)

1    be adequately represented by counsel at every critical stage of the

2    proceedings.  See Mempa v. Ray, 389 U.S. 128, 134 (1967).

3        Petitioner's disagreement over trial strategy is not a

4    conflict of interest.  Several courts recognize the distinction.

5    "[W]e are unpersuaded by [the defendant's] further attempt to style

6    his disagreement with counsel over trial tactics as a 'conflict of

7    interest.'"  United States v. Leggett, 81 F.3d 220, 227 (D.C. Cir.

8    1996).  In United States v. White, 174 F.3d 290, 296 (2d Cir.

9    1999), the court was not persuaded by the claim that a defendant's

10   "routine disagreement with his appointed counsel over defense

11   strategy [was] a conflict of interest."

12       Petitioner's argument is more accurately cast as a claim that

13   there was a "breakdown in the attorney-client relationship."  See

14   Daniels v. Woodford, 428 F.3d 1181, 1198 (9th Cir. 2005).

15   Initially, there was no indication that communication between

16   Thompson and counsel was a problem.  Thompson wanted another

17   attorney or to represent himself. (Lodgment No. 1, Clerk's Tr.,

18   vol. 2, 00404, 00414.)  On July 5, 2002, the court granted

19   Thompson's request and relieved defense counsel; the court was

20   prepared to appoint new counsel. (Lodgment No. 1, Clerk's Tr.,

21   vol. 3, 00536.)  Petitioner requested to proceed pro per.  The

22   court, on July 11, 2002, conducted an inquiry to determine whether

23   Thompson could competently represent himself. (Id.)  After

24   conducting its inquiry, the court granted Petitioner's request.

25   (Id.)

26       In order to be competent, counsel must be free from conflicts

27   of interest which adversely affect his performance.  Cuyler v.

28   Sullivan, 446 U.S. 335, 350 (1980) (discussing actively

representing conflicting interests); <u>Campbell v. Rice</u>, 408 F.3d 1166, 1170 (9th Cir. 2005).  When a trial court is aware that an actual or potential conflict exists, the Sixth Amendment requires the court to "'either . . . appoint separate counsel or to take adequate steps to ascertain whether the risk [is] too remote to warrant separate counsel.'"  <u>Campbell</u>, 408 F.3d at 1170 (citing <u>Holloway v. Arkansas</u>, 435 U.S. 475, 484 (1978)); <u>see also</u> <u>Jackson v. Ylst</u>, 921 F.2d 882, 888 (9th Cir. 1990).  "If the trial court fails to undertake either of these duties, the defendant's Sixth Amendment rights are violated."  <u>Campbell</u>, 408 F.3d at 1170.

In Thompson's case, the trial court did what the Sixth Amendment requires:  It held a hearing, removed counsel and appointed separate counsel.  Thompson rejected separate counsel, however, and decided to represent himself.  After another hearing, the court granted his request.  Before trial, Thompson was given a third attorney, Lee Plummer, to act as standby counsel.  (Lodgment No. 2, Rep.'s Tr., vol. 1, 4.)  Accordingly, whether characterized as a conflict of interest or a breakdown in the relationship between Thompson and his attorney, Petitioner received what he was entitled to under the Sixth Amendment.  Therefore, the state court's denial of this claim was neither contrary to, nor an unreasonable application of, clearly established Supreme Court law.  <u>See</u> <u>Williams</u>, 529 U.S. at 412-13.  Thompson is not entitled to habeas relief on this claim.

C.   **Petitioner's Second Request for Appointment of Counsel**

On November 5, 2007, Thompson filed his second request that the Court appoint counsel to represent him in litigating his Petition.  (Second Req. for Appointment of Counsel.)  His First

06cv2314

Motion for Appointment of Counsel was denied on March 20, 2007 [doc. no. 15].  This request is more appropriately characterized as a motion for reconsideration of Thompson's prior motion.  <u>See</u> S.D. Cal.Civ.L.R. 7.1(i).

Petitioner urges that counsel should be appointed to represent him because he has a "deteriorating medical condition" and recently underwent the "removal of a brain tumor." (Second Req. for Appointment of Counsel.)  Thompson's evidence does not support this request.  First, there is no evidence that Petitioner's condition is deteriorating.  Second, his surgery was for the "evacuation of a subdural hematoma," not a brain tumor.  (<u>Id.</u>, Decl. of Thompson, Ex. B (discharge summary).)

The Sixth Amendment right to counsel does not extend to federal habeas corpus actions by state prisoners.  <u>McCleskey v. Zant</u>, 499 U.S. 467, 495 (1991); <u>Bonin v. Vasquez</u>, 999 F.2d 425, 428 (9th Cir. 1993) (quoting <u>Chaney v. Lewis</u>, 801 F.2d 1191, 1196 (9th Cir. 1986)); <u>Knaubert v. Goldsmith</u>, 791 F.2d 722, 728 (9th Cir. 1986).  Nevertheless, financially eligible habeas petitioners seeking relief pursuant to 28 U.S.C. § 2254 may obtain representation whenever the court "determines that the interests of justice so require."  18 U.S.C.A. § 3006A(a)(2) (West 2000 & Supp. 2007); <u>Terrovona v. Kincheloe</u>, 912 F.2d 1176, 1181 (9th Cir. 1990).

The interests of justice require appointment of counsel when the Court conducts an evidentiary hearing on the petition or when the assistance of counsel is "necessary for effective discovery." 28 U.S.C.A. Rs. 6(a), 8(c) foll. § 2254 (West Vol. 2 2006); <u>Maybe v. Felix</u>, 545 U.S. 644, 675 (2005); <u>Terrovona</u>, 912 F.2d at 1177; <u>Knaubert</u>, 791 F.2d at 728.  Otherwise, the appointment of counsel

1  is discretionary.  <u>Maybe</u>, 545 U.S. at 675; <u>Terrovona</u>, 912 F.2d at

2  1177; <u>Knaubert</u>, 791 F.2d at 728.

3     Furthermore, "'[indigent state prisoners applying for habeas

4  corpus relief are not entitled to appointed counsel unless the

5  circumstances of a particular case indicate that appointed counsel

6  is necessary to prevent due process violations.'"  <u>Bonin v.</u>

7  <u>Vasquez</u>, 999 F.2d at 428 (quoting <u>Chaney v. Lewis</u>, 801 F.2d 1191,

8  1196 (9th Cir. 1986)).  A due process violation may occur in the

9  absence of counsel if the issues involved are too complex for the

10 petitioner.  <u>Id.</u> at 428-29.

11    The Eighth Circuit has suggested the following factors should

12 be considered when the court exercises its discretion to determine

13 whether appointment of counsel is appropriate:  "the legal

14 complexity of the case, the factual complexity of the case, and the

15 petitioner's ability to investigate and present his claims, along

16 with any other relevant factors."  <u>Haggard v. Parched</u>, 29 F.3d 469,

17 471 (8th Cir. 1994) (citations omitted).

18    These factors are useful in deciding whether due process

19 requires the appointment of counsel.  The issues and facts that

20 Thompson presents are not severely complex, and he adequately

21 explained his claim for relief in his Second Amended Petition and

22 his Traverse.  Further, before and since his surgery, Petitioner

23 has adequately represented himself.  He filed his Amended Petition,

24 a Motion to Proceed In Forma Pampers, and a Motion for Appointment

25 of Counsel [doc. nos. 6, 7, 8].  The Amended Petition and Traverse

26 demonstrate that he understands the relevant law relating to his

27 claim.  (<u>See</u> Am. Pet.; Traverse.)  Thompson's request for counsel

28 is made "[i]n the event of a recurrence causing dementia . . . ."

(Mot. for Appointment of Counsel 2.)  Yet, the inmate discharge
summary attached to Petitioner's declaration indicates that the
surgery was successful, and Thompson "did very well postoperatively
with no postoperative complications.  The patient is deemed
medically stable to be discharged back to the facility today
[October 28, 2007.]" (Second Req. For Appointment of Counsel, Decl.
of Thompson, Ex. B (discharge summary).)

        Under these circumstances, a district court does not abuse its
discretion in denying a state prisoner's request for appointment of
counsel as unwarranted.  See LaMere v. Risley, 827 F.2d 622, 626
(9th Cir. 1987).  At this stage of the proceedings, due process and
the interests of justice do not require the appointment of counsel.

        The assistance counsel provides is valuable.  "An attorney may
narrow the issues and elicit relevant information from his or her
client.  An attorney may highlight the record and present to the
court a reasoned analysis of the controlling law." Knaubert, 791
F.2d at 729.  As the court in Knaubert noted:  "[U]nless an
evidentiary hearing is held, an attorney's skill in developing and
presenting new evidence is largely superfluous; the district court
is entitled to rely on the state court record alone." Id. (citing
Sumner v. Mata, 449 U.S. 539, 545-57 (1981), and 28 U.S.C.
§ 2254(d)).  This Court, in denying Petitioner's request for
appointment of counsel, notes that it has "review[ed] the record
and render[ed] an independent legal conclusion." Id.

        For the above-stated reasons, the "interests of justice" do
not compel the appointment of counsel.  Accordingly, Petitioner's
second request for appointment of counsel is **DENIED**.

## V.   CONCLUSION AND RECOMMENDATION

The Court submits this Report and Recommendation to Chief United States District Judge Irma E. Gonzalez under 28 U.S.C. § 636(b)(1) and Local Civil Rule HC.2 of the United States District Court for the Southern District of California. For the reasons outlined above, **IT IS HEREBY RECOMMENDED** that the Court issue an Order (1) approving and adopting this Report and Recommendation, and (2) directing that Judgment be entered denying the Petition. **IT IS HEREBY ORDERED** that Petitioner's Second Request for Appointment of Counsel [doc. no. 24] is **DENIED**.

**IT IS ORDERED** that no later than **February 29, 2008,** any party to this action may file written objections with the Court and serve a copy on all parties.  The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and served on all parties no later than **March 17, 2008**.  The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order.  See Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153, 1156 (9th Cir. 1991).

**DATED:** January 25, 2008

_Ruben Brooks_
_____
Hon. Ruben B. Brooks
**UNITED STATES MAGISTRATE JUDGE**