# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| TRAVIS RAY THOMPSON,<br><br>　　　　　　　　Petitioner,<br><br>vs.<br><br><br><br>SCOTT KERNAN and BILL LOCKYER,<br><br>　　　　　　　　Respondents. | CASE NO. 06cv2314 IEG (RBB)<br><br>**ORDER:**<br><br>**1) ADOPTING THE REPORT & RECOMMENDATION OF THE MAGISTRATE JUDGE; (Doc. No. 26)**<br><br>**(2) REJECTING PETITIONER'S OBJECTIONS; (Doc. No. 33)**<br><br>**(3) DENYING THE PETITION; (Doc. No. 6) and**<br><br>**(4) DENYING CERTIFICATE OF APPEALABILITY.** |
|---|---|

Petitioner Travis Ray Thompson ("petitioner"), a state prisoner proceeding pro se, has filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.  His petition challenges his July, 2003 convictions for assault by a prisoner and possession of a weapon by a prisoner.  Petitioner raises six claims: (1) he received ineffective assistance of appellate counsel; (2) the court denied him due process of law by failing to instruct on his entrapment defense; (3) the prosecutor committed misconduct by failing to turn over material exculpatory information; (4) the political influence of the correction officers' union rendered his trial fundamentally unfair; (5) he is actually innocent; and (6) the trial court violated his right to counsel by forcing him to represent himself.

The Court referred this matter to United States Magistrate Judge Ruben B. Brooks pursuant to 28 U.S.C. § 636(b)(1)(B).  On January 25, 2008, Magistrate Judge Brooks issued a Report and Recommendation ("Report") recommending the Court deny the petition.  (Doc. No. 26.)  After receiving an extension of time, petitioner filed objections to the Report on April 9, 2008.  (Doc. No. 33.)

Following de novo review of petitioner's claims, the Court finds Magistrate Judge Brooks's Report to be thorough, complete, and an accurate analysis of the legal issues presented in the petition.  For the reasons explained below, the Court: (1) adopts in full Magistrate Judge Brooks's Report; (2) rejects the petitioner's objections; (3) grants respondents' motion to dismiss the petition; and (4) denies a certificate of appealability.

## BACKGROUND

### Factual Background

The Court hereby incorporates by reference the magistrate judge's accurate recitation of the facts as determined by the California Court of Appeal.  (Report at 3-5.)  As the magistrate judge correctly noted, the Court presumes state court findings of fact to be correct.  In summary, the underlying events took place while petitioner was incarcerated at Centinela State Prison.  Petitioner stabbed Correctional Officer Leopoldo Vega from behind with a prisoner-made weapon on August 21, 1999.  Petitioner then choked the guard assigned to escort him to administrative segregation, Correctional Officer Nicole Panzer.  Petitioner testified at trial and admitted stabbing Vega and choking Panzer.  He claimed he was provoked into attacking Vega because Vega was systematically denying him and other African-American inmates showers.  He also claimed Panzer struck him first and he acted in self-defense.

### State Procedural Background

By information on October 25, 2000, the state charged petitioner with six counts stemming from the Vega and Panzer incidents.  After a trial on the question of his competency to stand trial, the jury found him competent.  Petitioner moved several times to remove his appointed counsel and represent himself, and on July 11, 2002, the court granted petitioner's motion, but appointed stand-by counsel.  The guilt phase of petitioner's jury trial began June 16, 2003.  On June 30,

1  2003, the jury found petitioner guilty on all counts except for one count of battery against Panzer.
2  The jury trial on petitioner's sanity began on June 30, 2003, and on July 3, 2003, the jury found he
3  was sane when he committed the assault on Vega and possessed the weapon. The jury could not
4  reach a verdict as to his sanity during his attack on Panzer, and the court declared a mistrial on
5  those counts. At a bench trial on July 3, 2003, the court found petitioner had two previous
6  convictions for serious felonies. The court applied California's Three Strikes Law and sentenced
7  petitioner to twenty-five years to life with the possibility of parole.

8  Petitioner appealed his convictions, but his court-appointed attorney did not raise any of
9  the grounds raised in this federal petition. (Lodgment 3.) The California Court of Appeal
10 affirmed petitioner's conviction in an unpublished decision filed January 26, 2005. (Lodgment 6.)
11 Petitioner filed a petition for review in the California Supreme Court, which was denied without
12 citation of authority on April 13, 2005. (Lodgments 7 & 8.)

13 Petitioner filed a petition for writ of habeas corpus in Superior Court, which the court
14 denied in a brief, unpublished written opinion on March 24, 2005. (Lodgments 9 & 10.)
15 Petitioner then filed a habeas corpus petition in the California Court of Appeal, which the court
16 denied on June 20, 2005. (Lodgments 11 & 12.) The California Supreme Court denied his
17 petition for habeas corpus without comment on August 30, 2006. (Lodgment 14.) Petitioner's
18 state habeas petitions included most of the claims raised in his federal petition, but did not raise his
19 claims of actual innocence or fundamental unfairness of his trial due to the union's political
20 influence.

21 Federal Procedural Background

22 Petitioner filed a petition for writ of habeas corpus in this court on October 13, 2006.
23 (Doc. No. 1.) The Court dismissed the petition without prejudice on November 14, 2006 for
24 failure to name a proper respondent. (Doc. No. 4.) Petitioner filed an amended petition on
25 December 26, 2006. (Doc. No. 6.) On April 2, 2007, respondents filed an answer to the petition.
26 (Doc. No. 16.) Petitioner filed a traverse nunc pro tunc to June 8, 2007. (Doc. No. 20.) On
27 January 25, 2008, Magistrate Judge Brooks issued a Report recommending the Court deny the
28 petition. (Doc. No. 26.) Petitioner filed objections on April 9, 2008. (Doc. No. 33.)

## DISCUSSION

**A.     Legal Standards**

The magistrate judge set forth the appropriate standard of review with regard to the petition. (Report at 8-10.) Where, as here, the California Supreme Court summarily denied petitioner's habeas corpus petition, the Court "looks through" to the underlying appellate court decision. Ylst v. Nunnemaker, 501 U.S. 797, 803-04 (1991); Medina v. Hornung, 386 F.3d 872, 877 (9th Cir. 2004). Because the dispositive state court order does not "furnish a basis for its reasoning," the court must conduct an independent review of the record to determine whether the state court's decision was either "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d); Williams v. Taylor, 529 U.S. 362, 403, 412-13 (2000).

Petitioner has objected to the Report in its entirety. The Court therefore reviews the Report de novo. 28 U.S.C. § 636(b)(1)(C); Holder v. Holder, 392 F.3d 1009, 1022 (9th Cir. 2004).

**B.     "Political" and Entrapment Defenses**

Petitioner argues the trial court violated his due process rights by refusing to instruct the jury on his primary defense of entrapment and/or political motivations behind the charges. Petitioner claims the guards intentionally provoked his assault in order to increase the statistics regarding violence in prison and thus increase the political power of the correction officers' union. The trial court instructed the jury on self-defense, but did not instruct the jury on entrapment or a "political" defense.

1.     Magistrate Judge's Report

The magistrate judge identified the clearly-established law regarding failure to instruct the jury on a defense theory. Due process of law requires trial courts to instruct the jury on a defense theory if it is "legally sound and evidence in the case makes it applicable." Beardslee v. Woodford, 358 F.3d 560, 577 (9th Cir. 2004). In California, an entrapment defense requires the defendant to prove governmental involvement in creating the criminal activity and that "the

conduct of the law enforcement agents or officers would likely induce a normally law-abiding person to commit the crime." People v. Barraza, 23 Cal. 3d 675, 689-90 (1979). Petitioner, a prison inmate incarcerated for carjacking and assault with a firearm, was not a normally law-abiding citizen.[1]  Moreover, petitioner claimed his attack was provoked by Vega's discriminatory shower policy, which is not conduct likely to induce an assault by a normally law-abiding individual.  Because in this case an entrapment defense was not available, the magistrate judge recommended the Court deny this ground of the petition.

The magistrate judge also noted that petitioner alternatively characterizes his entrapment defense as a "political defense."  Petitioner argues the court should have dismissed the charges because of a conspiracy by the correction officers' union to provoke assaults in order to increase its political influence.  Because there is no "political defense" under California law, the magistrate judge recommended this claim be denied.

2.      Petitioner's Objections

Petitioner objects that no limits to an entrapment defense are found in the case of Sorrells v. United States, 287 U.S. 435, 451 (1932), a case interpreting a federal statute.  As the magistrate judge explained, in order to plead a violation of the due process clause at his trial, petitioner must show that the court denied him a defense which was applicable to him under state law.  Petitioner was not a normally law-abiding citizen and there is no reasonable probability a juror would have found he was entrapped into assaulting Vega.

Petitioner further objects that a "political" defense to the assault charge exists under the decisions in Karadzole v. Artukovic, 427 F.2d 198 (9th Cir. 1957) and Quinn v. Robinson, 783 F.2d 776 (9th Cir. 1986).  In those cases, the Ninth Circuit considered the appropriateness of extraditing alleged war criminals.  The international treaties at issue provided an exception to extradition for those accused of "political offenses."  Neither case is analogous to petitioner's proffered "political defense" that the correction officers provoked his criminal acts while in prison

---

[1] As the magistrate judge also noted, petitioner had also received several Rules Violation Reports for mutual combat.

in order to obtain more funding in the political process.[2]

Accordingly, the Court rejects petitioner's objections, adopts the Report, and denies this claim of the petition.

**C.    Brady Violation**

Petitioner also claims the prosecution committed misconduct in failing to investigate and disclose evidence relating to petitioner's defense that the correction officers provoked his assault in order to increase the political clout of their union.

   1.    Magistrate Judge's Report

The magistrate judge correctly identified the clearly-established law with respect to prosecutorial misconduct by failing to disclose pertinent evidence. Under Brady v. Maryland, 373 U.S. 83 (1963), a prosecutor must disclose all material evidence, including impeachment evidence, to the defendant. In order to establish a Brady violation, petitioner must show (1) the evidence was suppressed by the prosecution, either willfully or inadvertently; (2) the withheld evidence was exculpatory or impeachment material; and (3) he was prejudiced by the failure to disclose. See Strickler v. Greene, 527 U.S. 263, 281-82 (1999).

Specifically, petitioner claims the prosecution should have disclosed the "Hagar Report" and certain "press releases." A federal court-appointed monitor issued the "Hagar Report" approximately six months after petitioner's trial. There is no indication the report was available to the prosecution or any other state entity prior to its public release. Moreover, the information contained therein related to distinct cases of prison guard corruption, not petitioner's case or the guards involved in petitioner's trial. The magistrate judge explained this evidence, at most, showed some correction officers are corrupt and the correction officers' union is politically powerful. None of the asserted "evidence" strengthened petitioner's allegations that the guards deliberately provoked his assaults in order to increase their political power. Accordingly, the magistrate judge recommended the Court deny this claim.

---

[2]Baker v. Carr, 369 U.S. 186 (1962), a decision on the limits on the judiciary's involvement in "political questions," is similarly inapplicable. The criminal case against petitioner was indisputably a "case or controversy" within the meaning of Article III of the Constitution, regardless of any alleged political motivations of the correction officers. None of the issues presented by petitioner's case were nonjusticiable political questions under Baker.

2. Petitioner's Objections

Petitioner argues the withheld evidence was not speculative and would have bolstered his claims regarding the union conspiracy. Petitioner continues to claim, without support, that the Hagar Report was available to the prosecution. Petitioner also argues the prosecution should have turned over certain "press releases." It is unclear what petitioner means, although he repeatedly refers to the press clippings included in his submissions to this Court. These articles and editorials became available at the time of their publication, and were never uniquely available to the prosecution. Moreover, none of the articles relate to material issues in petitioner's trial. Petitioner's objections regarding the prosecution's failure to turn over certain news broadcasts investigating the guards' union are similarly flawed. There is no indication the prosecution had access to these videos, which were broadcast after petitioner's trial, no indication the videos were not equally available to the defense, and, finally, no indication the videos would have supported petitioner's claims in any way.

Accordingly, the Court rejects petitioner's objections, adopts the Report, and denies this claim of the petition.

**D.     The Political Power Exerted by the Correction officers' Union**

In this claim, petitioner argues the political influence of the correction officers' union rendered his trial fundamentally unfair.

1. Magistrate Judge's Report

The magistrate judge noted that although this claim was not exhausted in state court, the Court should nevertheless deny it because it is "perfectly clear that the applicant does not raise even a colorable federal claim." Cassett v. Stewart, 406 F.3d 614, 624 (9th Cir. 2005). The magistrate judge reviewed the materials provided by petitioner in support of this claim and concluded that "[a]t most, they suggest that the [union] wields substantial political influence and that some prison guards are corrupt." (Report at 33.) Because petitioner has not made any showing that a conspiracy to create prison violence existed, or that any conspiracy influenced the trial court's rulings, the magistrate judge recommended this claim be denied.

//

  2. Petitioner's Objections

Petitioner asserts that the correction officers' union exerts substantial political influence, and the influence rendered his trial fundamentally unfair. The Court has again reviewed the press clippings which petitioner argues support this claim. Upon <u>de novo</u> review, the Court finds no evidence petitioner received an unfair trial due to the political power of the union. The Court has also reviewed the exhibits attached in petitioner's third set of lodgments, filed April 9, 2008. (Doc. No. 34.) The articles and editorials collected by petitioner discuss various strains on prison funding, the competition for funding between state-run and private prisons, and allegations of corruption aimed at correction officers not involved in petitioner's case. None support petitioner's claim of an unfair trial.

Accordingly, the Court rejects petitioner's objections, adopts the Report, and denies the petition as to this claim.

**E. Actual Innocence**

In this claim, petitioner alleges he is actually innocent of the assault and weapon possession charges.

  1. Magistrate Judge's Report

The magistrate judge noted petitioner failed to exhaust this claim in state court, but the Court may nonetheless deny it because it is perfectly clear it has no merit. <u>Cassett</u>, 406 F.3d at 624. The magistrate judge explained that there is no evidence petitioner is innocent of the crimes and substantial evidence supporting the conviction. Thus petitioner has not met his burden of affirmatively proving he is probably innocent. <u>See</u> <u>Turner v. Calderon</u>, 381 F.3d 851, 872 (9th Cir. 2002). The magistrate judge recommended denying this claim.

  2. Petitioner's Objections

Petitioner argues the "Hagar Report" is newly-discovered evidence revealing a conspiracy among correction officers to lie under oath regarding inmate attacks. The Report does not pertain to petitioner's case and is not evidence that he did not stab Vega with a prisoner-made weapon. Substantial evidence supported the conviction, including petitioner's testimony at trial admitting he stabbed Vega and possessed the prisoner-made weapon. Accordingly, petitioner has not met

his burden to show he is actually innocent.

The Court therefore rejects petitioner's objections, adopts the Report, and denies the petition as to this claim.

**F.      Forced Self-Representation**

Petitioner claims the trial court violated his right to counsel when it removed his appointed counsel and granted petitioner's request to represent himself.

1.      Magistrate Judge's Report

The magistrate judge correctly identified the clearly-established federal law regarding the right to self-representation and the right to counsel. Under Iowa v. Tovar, a defendant's waiver of the right to counsel and decision to represent himself must be "knowing, voluntary and intelligent" and he or she "must be warned specifically of the hazards ahead." 541 U.S. 77, 88-89 (2004). In this case the trial court warned petitioner of the hazards of self-representation, offered him new counsel after he developed problems with his first court-appointed lawyer, and appointed stand-by counsel. Accordingly, the magistrate judge recommended denying this claim.

Petitioner further argues his court-appointed counsel had a conflict of interest due to the political power of the prison union. Petitioner points to counsel's refusal to raise his political defense to the charges as evidence of this conflict. The magistrate judge recommended denying this claim because this "disagreement" over trial tactics did not constitute a conflict of interest. Moreover, the trial court responded to the breakdown in the attorney-client relationship by granting petitioner's motion for new counsel and offering to provide new counsel, but petitioner persisted in his requests to represent himself.

2.      Petitioner's Objections

Petitioner objects that a conflict existed because counsel refused to raise petitioner's political defense. As previously explained, no "political defense" exists under California law. Counsel's decision not to investigate this defense or offer evidence to support this defense did not create a conflict of interest, but rather a disagreement over trial strategy. Moreover, the trial court removed appointed counsel from the case before trial due to the breakdown of the attorney-client relationship. The court then offered petitioner new court-appointed counsel, but petitioner

1  repeatedly requested to represent himself.  After another hearing in which the court fully disclosed
2  the risks of self-representation, the court granted this request and appointed a new attorney as
3  stand-by counsel.  The trial court's actions thus complied fully with the requirements of the Sixth
4  Amendment and the record indicates petitioner's decision to represent himself was entirely
5  voluntary.

6  Accordingly, the Court adopts the Report, rejects petitioner's objections, and denies the
7  petition as to this claim.

**G.    Ineffective Assistance of Appellate Counsel**

9  Finally, petitioner argues his appellate counsel was constitutionally ineffective in failing to
10 raise several issues on appeal.  Specifically, petitioner asserts appellate counsel should have
11 argued the trial court erred in preventing petitioner from presenting a necessity defense to the
12 weapons charge and preventing petitioner from presenting an entrapment or "political" offense.
13 Petitioner also asserts appellate counsel should have argued the prosecutor violated petitioner's
14 rights under Brady in withholding material exculpatory evidence.  Lastly, petitioner claims counsel
15 was ineffective in failing to challenge petitioner's sentence as violating the Eighth Amendment's
16 prohibition on cruel and unusual punishment.

17     1.    The Magistrate Judge's Report

18 The magistrate judge correctly identified Strickland v. Washington, 466 U.S. 668, 688
19 (1984), as the clearly-established federal law regarding ineffective assistance of counsel.  The
20 Report explained appellate counsel was not ineffective in failing to raise arguments on appeal
21 which did not have any reasonable probability of success.  For the reasons described earlier with
22 regard to the entrapment defense and Brady claim, the magistrate judge concluded those claims
23 had no merit.  Accordingly, appellate counsel was not ineffective in failing to raise those claims.
24 The magistrate judge also recommended the Court deny petitioner's claim that counsel should
25 have appealed based on the defenses of necessity and self-defense, because those defenses are not
26 available in California for the crime of possession of a weapon by an inmate.  See People v.
27 Velasquez, 158 Cal. App. 3d 418, 420-21 (Cal. Ct. App. 1984).  Finally, the magistrate judge
28 concluded petitioner could not have prevailed on an Eighth Amendment claim because petitioner's

1  sentence under the Three Strikes Law was not grossly disproportional. See Lockyer v. Andrade,
2  538 U.S. 63, 72 (2003) ("A gross disproportionality principle is applicable to sentences for terms
3  of years.").

4       2.    Petitioner's Objections

5  Petitioner argues each of these asserted claims had merit and should have been raised by
6  appellate counsel. As discussed earlier in this decision, petitioner's claim under Brady and his
7  claim to an entrapment or political defense have no merit. Accordingly, the Court rejects
8  petitioner's argument that failure to raise those claims constituted ineffective assistance of counsel.

9  Counsel's performance was also not deficient because she failed to appeal the trial court's
10 correct ruling that necessity and self-defense are not defenses to possession of a weapon by an
11 inmate in California. In Velasquez, the California Court of Appeal held an inmate may not defend
12 his or her possession of a weapon by asserting the weapon was protection against a future attack.
13 158 Cal. App. 3d at 420-21. A self-defense or necessity defense to such a charge would frustrate
14 the state's intent to protect inmates and guards from assaults by armed prisoners. Id. Accordingly,
15 the trial court did not err in failing to instruct the jury on these defenses to the weapons charge and
16 appellate counsel did not render ineffective assistance in failing to appeal on this ground.

17 Finally, petitioner's Eighth Amendment claim also would have been futile on appeal.
18 Petitioner objects that the political motivations behind the charges make his case the
19 "extraordinary case" establishing gross disproportionality. Petitioner's prior felonies were violent
20 crimes (carjacking and assault with a firearm) and his new convictions were also for crimes of
21 violence (assault, possession of a weapon). Thus petitioner's criminal record was significantly
22 more serious than the defendant's record in Rummel v. Estelle, 445 U.S. 263 (1980), in which the
23 Supreme Court upheld a sentence of life in prison, and more serious than the defendant's in Solem
24 v. Helm, 463 U.S. 277 (1983), in which the court overturned a sentence of life in prison. The
25 sentence he received did not violate the Eighth Amendment.

26 Accordingly, the Court rejects petitioner's objections, adopts the Report, and denies the
27 petition as to this claim.
28 //

**H.     Certificate of Appealability**

A petitioner complaining of detention arising from state court proceedings must obtain a certificate of appealability to file an appeal of the final order in a federal habeas proceeding. 28 U.S.C. § 2253(c)(1)(A) (2007). The district court may issue a certificate of appealability if the petitioner "has made a substantial showing of the denial of a constitutional right." Id. § 2253(c)(2). To make a "substantial showing," the petitioner must "demonstrat[e] that 'reasonable jurists would find the district court's assessment of the constitutional claims debatable[.]'" Beaty v. Stewart, 303 F.3d 975, 984 (9th Cir. 2002) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)). Petitioner has not made a "substantial showing" as to any of the claims raised by his petition, and the Court therefore *sua sponte* denies him a certificate of appealability.

                                                        CONCLUSION

For the foregoing reasons, the Court hereby (1) REJECTS petitioner's objections, (2) ADOPTS the magistrate judge's Report, (3) DENIES the petition for writ of habeas corpus, and (4) DENIES petitioner a certificate of appealability. The Clerk of the Court shall close the case.

**IT IS SO ORDERED.**

**DATED: July 11, 2008**

_____
**IRMA E. GONZALEZ, Chief Judge**
**United States District Court**